Whitaker, Judge,
delivered the opinion of the court:
This case has been referred to us by Congress asking for a report on the facts and on whether plaintiff has a claim against the United States, either in law or equity, and the amount legally or equitably due, if any.
The facts are stated in the findings; they are repeated in this opinion only to the extent necessary to give the reason for the conclusion we have reached. That conclusion is that plaintiff has no claim against the United States either in law or equity.
Except for the passage of the Philippine Rehabilitation Act of 1946 (60 Stat. 128), plaintiff of course would have no right of action against the United States, because it was not the United States that deprived it of its property. That Act authorizes the Commission set up by the Act to make an award to a person in the Philippines for “physical loss or destruction of or damage to property * * * as a result of enemy attack * * The proof tends to show that some of plaintiff’s property was so lost or destroyed, to wit, its “materials on hand, supplies, pieces in factory, plant equipment, and a 1940 Pontiac” automobile. Plaintiff claims a total value for these of $18,420.20.
The proof does not show what happened to the items in the hands of subcontractors. The subcontractors were housewives, to whom the plaintiff had delivered partly processed materials for finishing. What these women did with the materials on hand when the enemy occupied Manila is not shown. After reoccupation by the American forces, an employee of the old company, of the same name as plaintiff’s, undertook to locate the materials, but could find neither the materials nor the women.
We think it fair to say that plaintiff lost these materials also as a result of “enemy attack.” Plaintiff claims they had a value of $16,487.03.
Plaintiff’s figures are not disputed.
*764 The Act authorizes payment for “the physical loss * * * or damage to property.” Obviously, “overhead and accounts receivable” do not come within this category; nor does the proof show that they were lost as the result of enemy attack.
Plaintiff of course is not entitled to recover for “personal clothing of employee.”
Had the Commission found that plaintiff was a qualified claimant under the Act, the amount it would have approved, in any event, could not have exceeded $34,907.23, of which amount the Commission would have paid 52% percent. But we do not think it is entitled to any amount for two reasons:
(1) The Philippine Rehabilitation Act vests exclusive jurisdiction in the Commission to make an award to a claimant and provides that its findings “shall not be reviewable by any court.” The Commission allowed plaintiff nothing. This, of course, does not prevent Congress from doing so; but, in the absence of an award by the Commission, plaintiff has no claim against the United States either in law or equity.
(2) But, more important, plaintiff is not one of the class of persons who qualify for an award under the Act, whether or not its property was lost or destroyed by enemy action. It was not every person who had lost his property by such action that qualified for an award. It was only those persons who had rebuilt, replaced, or repaired the property lost or damaged; or, if this was “impossible for any reason beyond the control of the claimant,” the Commission was authorized to make payment, but “as a condition to the making of such payment, the Commission shall require that the whole of such payment shall be reinvested in such manner as will further the rehabilitation or economic development of the Philippines.”
The Act was not passed for the benefit of those who had lost their property through the fortunes of war, but rather for the purpose of rehabilitating the economy of the country. No claim for lost property was paid unless the Commission thought its payment would contribute toward the rehabilitation of the economy of the country.
*765 The Act itself makes this clear. House Eeport No. 1921, 79th Congress, 2d Session, on S. 1610, states the purpose somewhat more plainly. It says on page 9:
The bill is not a private claims measure to reimburse individuals or organizations for damage incurred in war. The primary function of the payment is to assist and encourage rehabilitation and rebuilding of the economy and social structure of the Nation. Some individual hardships may be caused by insistence on the rehabilitation principle, but your committee felt that no other considerations should be provided in this legislation.
The Commission’s report to Congress on March 31, 1951, shows that this is the way the Act was administered. It says:
The Commission consistently maintained a close check on the uses to which the larger claimants put their war damage payments. Its regulations prescribed those types of reinvestment which it believed were required to meet the intent of the law. Before first payments of $15,000 or more were made, the claimant was required to submit a sworn statement regarding the planned expenditure of the money, except when the Commission had concrete evidence that he had invested more in the rehabilitation of his property than he would be paid. Unless the reinvestment statements were satisfactory, payments were denied. Before second and final payments were made on claims for which combined payments would total $25,000 or more, the Commission again communicated with claimants to make certain that first payments had been expended in accordance with their sworn statements and that second payments would also be used for rehabilitation. These replies had to be satisfactory to the Commission before funds were released. In this manner, the Commission believes it insured the proper expenditure and reinvestment of its rehabilitation funds.
Now the proof shows that after plaintiff’s plant was closed by the Japanese, it wound up its business and was dissolved in 1945. Having been dissolved, plaintiff, of course, could not rebuild or replace its equipment and its materials and supplies and, hence, could contribute nothing toward the rehabilitation of the Philippine economy.
Nor did the formation of the new corporation in 1950 under the old name qualify it for an award, because, as found *766 by the Commission, it did not intend to engage in business in the Philippines. Hence, the payment to it of any award would not contribute toward the rehabilitation of the Philippine economy.
The Commission further found that plaintiff intended to invest the amount paid to it in the business conducted by Baby Fashions, Inc. Nevertheless, the Commission was of the opinion that the plaintiff was not a qualified claimant under the Act.
Baby Fashions, Inc., was not the successor of Equitable Infants Wear, Inc. It was wholly owned by Pauline Tawil, the widow of Ealph Tawil. The stock of Equitable Infants Wear was owned by Ealph Tawil and Shaya Dweck. They were two- separate and distinct corporations.
Shaya Dweeb, one of the two stockholders of the Equitable Infants Wear, but not a stockholder in Baby Fashions, at one time stated to the Commission that all of the assets of Equitable Infants Wear, except its claim for the loss of its property, were transferred to Baby Fashions, but in another letter he stated that Baby Fashions was not and never was the successor to Equitable Infants Wear, and said, in contradiction to his other letter, that Equitable Infants Wear had not transferred its assets and liabilities to Baby Fashions. At least it appears that it never transferred its claim for the loss of its property.
Plaintiff’s expressed intention of investing the proceeds of the award in the business of Baby Fashions, Inc., would not seem to make of it a qualified claimant under the Act. Baby Fashions, Inc., was a New York corporation which had its goods manufactured in the Philippines, but sold them in this country. An investment in its business, therefore, might or might not contribute to the rehabilitation of the Philippine economy. Such an investment did not replace the property lost or destroyed, which was the prime purpose of the Philippine Eehabilitation Act; Baby Fashions, Inc., already had its plant and equipment, which it had been operating since September 1945.
We cannot say, therefoi’e, that an investment in the business of this company would have contributed toward the rehabilitation of the economy of the Philippines.
*767 However, the determination of that question and of all the other questions concerned with the making of an award was committed to the Philippine War Damage Commission, and that Commission was of opinion that the plaintiff had not qualified under the Act.
We must conclude, therefore, that the plaintiff has no claim against the United States, either legal or equitable. We so report to the House of Representatives.
It is so ordered.
Laramore, Judge; Maddest, Judge; and Jones, Chief Judge, concur.
Littleton, Judge, is of the opinion that plaintiff has an equitable claim.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner William E. Day, and the briefs and argument of counsel, makes the following findings of fact:
1. On June 15,1954, the House of Representatives adopted House Resolution 561, the text of which is as follows:
Resolved, That the bill (H. R. 1134) entitled “A bill for the relief of Equitable Infants Wear, Incorporated”, together with all accompanying papers, is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and said court shall proceed expeditiously with the same in accordance with the provisions of said sections, and report to the House, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.
The text of H. R. 1134 is as follows:
Be it enacted by the Senate and Mouse of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to Equitable Infants Wear, Incorporated, of New York, the sum of $75,000. The payment of such sum shall be in full settlement of all claims of the said Equitable Infants Wear, Incor *768 porated, against the United States arising when the winding up of the affairs of the Philippine War Damage Commission prevented a proper claim from being filed with it on behalf of such corporation: Provided, That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000.
2. Equitable Embroidery Co., Inc., was organized in 1925 as a New York corporation to engage in the business of manufacturing and generally dealing in art linens, embroideries, silks, tapestries, and the like, in any part of the world. In September 1940, its name was formally changed to Equitable Infants Wear, Inc. Its main office was in New York City. This firm, which had operated in Puerto Eico, commenced operations in the Philippines at Manila in 1939. Its business involved the sending of yard goods from the United States to the Philippines where it was stamped and cut into items of children’s wear, then sewed, trimmed and embroidered by subcontractors into finished items and returned to the United States for sale. This business was so operating until the fall of Manila during the first week of January 1942, when the Japanese military police closed it by sealing its factory. A rather complete inventory had been taken by this firm’s resident manager on December 31, 1941, which included the material in various stages of processing in the hands of its subcontractors.
3. The company described in the foregoing finding did no further business in the Philippines after January 1942. From evidence of record (income tax returns for calendar years 1942 and 1943), it appears that operations of some sort were carried on by it at least until the end of 1943. This firm was legally dissolved in January 1945.
4. On April 30,1946, the Philippine Eehabilitation Act of 1946 (60 Stat. 128) was approved by the President.
5. On or about July 3,1947, a private property claim (claim No. 422) was filed with the United States Philippine War *769 Damage Commission, hereinafter referred to as “the Commission,” in the total sum of 80,568.21 pesos, the equivalent of $40,284.10. An incomplete photostatic copy of the claim as filed was received in evidence as plaintiff’s exhibit 7. This copy was among the papers received in the office of the clerk of this court as one of the accompanying papers to the House Resolution forwarded by the Clerk of the House of Representatives. The claim was for the following items and amounts:
Materials on hand_1 Supplies-1?30,240.40 Pieces in factory_j ($15,120.20)
Contractors’ balances (Items in hands of subcontractors)_5*32, 974.07 (16,487.03)
Overhead_ P9,215.74 (4, 607.87)
1940 Pontiac_ P‘2,800. 00 (1,400.00)
Plant equipment_ P3, 800. 00 (1,900. 00)
Accounts receivable_ PI, 400. 00 (700.00)
Personal clothing of employee_ P138. 00 (69.00)
6. On October 7,1948, the Commission addressed the following letter to Equitable Infants Wear, Inc.:
In connection with your claim No. 422, please submit answers to the following:
1. Submit a copy of the following, if possible:
a. Incorporation papers of the Equitable Infants Wear, Inc.
b. Incorporation papers of the Equitable Embroidery Company.
c. Incorporation papers of the Baby Fashions, Inc.
2. Please furnish us with the present addresses of the following persons: Tomasa Y. Picache, Nieves Velasquez, and Joaquin Borja.
3. Please submit a copy of the inventory on the reports as of 1940 and 1941, upon which the claim for inventory items was based.
4. Were any of the items claimed acquired on the in-stalment basis? If so, were they fully paid as of December 1941 ?
5. Has any claim been filed with any other agency of the U. S. Government? If any, have you been paid and how much?
6. Are there any outstanding liens or encumbrances on any of the property claimed ? If any, please specify.
7. Please furnish us with the names and present addresses of the business firms or companies with which *770 you dealt, as well as your creditors, if any, who are at present in the Philippines.
8. Please submit a new list of the inventory items giving the following information for each item: age, model, make, materials, size, number and kind of pieces in a set, and state whether the “cost when new” for each item represents actual cost to you, or whether it includes profits.
9. Explain what you mean on the items of “20% overhead on P46,078.69.”
10. Please furnish us with identifying details on the following items:
Wooden office clock, manager’s desk, combination safe, typewriters, calculating machine, adding machine, punch clock, and electric fans.
11. Please submit a new list of all items claimed under inventory items with all the necessary information required under Part VI.
12. Is the corporation doing business in the Philippines at present ? If not, does it intend to resume business here?
13. If Mr. Balph C. Tawil, President of the Company, is authorized to file this claim for the corporation, please submit an authorization to that effect signed by the members of the Board of Directors.
14. Submit any and all papers which will tend to clarify this claim and prove the existence and ownership of all the property.
Your claim is being held in suspense, pending receipt of the information requested herein. Please return the duplicate copy of this letter with your reply.
7. No reply to the above-described letter is in evidence. Apparently a reply dated February 14, 1949, was received, however, as indicated by a further inquiry dated June 24, 1949, addressed to Equitable Infants Wear, Inc., by the Assistant Chief of the Large Claims Division of the Commission, as follows:
This is to acknowledge receipt of your letter of February 14,1949, and request that you furnish the following additional information and documents:
1. If the Baby Fashions, Inc. is the legal successor to the Equitable Infants Wear, Inc., since 1944, why is the claim filed in the name of the latter?
2. Document showing the transfer of the assets and liabilities of the Equitable Infants Wear, Inc., to the Baby Fashions, Inc.
*771 3. Certificate of Registration of the Baby Fashions, Inc.
4. Verified statement of the proper officer of the corporation to the effect that the Equitable Infants Wear, Inc., was not owned or controlled by enemy aliens or collaborators as of December 7,1941.
5. How was your 1941 inventory prepared. Relate the circumstances surrounding its preparation.
6. 1941 Balance Sheet, 1941 Profit and Loss Statement and 1941 Income Tax Returns, if available.
7. Explain the items laundry contractors balance, sewing contractors balance and embroidery contractors balance.
8. Bills of lading and invoices of 1941 shipments from New York to Manila and vice versa.
9. Certificate of registration or other acceptable evidence showing ownership of the automobile under claim.
10. “Year when new” of the typewriter tables, calculating machine, and manager’s desk.
This claim is being held in abeyance pending receipt of the above-listed requirements.
8. The Director of the Bureau of Private Property Claims of the Commission wrote to Equitable Infants Wear, Inc., on October 3,1949, advising that it had requested additional information on June 24, 1949, which had not been received and unless it was submitted within 60 days, the claim would be adjudicated on the present record.
9. Ralph Tawil, who had been president and directing head (in New York) of Equitable Infants Wear, Inc., up to the time it had dissolved in 1945, died in August 1949. His death was preceded by a long illness according to the testimony of his widow, Pauline Tawil.
10. On November 14, 1949, the Secretary of the Commission sent the following letter to Equitable Infants Wear, Inc.:
Reference is made to claim No. 422 filed in the name of the above corporation. There is no showing in the Commission’s records that the claimant corporation has authority to engage in active business or that a successor corporation has been formed to carry on the activities previously conducted by it. The Commission wishes to point out that the primary purpose of the Philippine Rehabilitation Act of 1946? as amended, is to assist m the rehabilitation of the Philippines, and it is of the view that it is without authority to authorize payment to corporate claimants unless such claimants possess the *772 legal right to engage in active business or to make the required reinvestments in accordance with the rules and regulations of the Commission.
You are advised, therefore, that the above claim is for disallowance unless—
(a) The corporation can show its authority to engage in active business; or
(b) A successor corporation, with legal authority to engage in active business or make the required reinvest-ments, is formed within 90 days from the date of this letter.
11. Thereafter on January 24, 1950, the Secretary of the Commission wrote to Equitable Infants Wear, Inc., stating that the claim had been examined and wholly disallowed because it, as a dissolved corporation in the process of liquidation with no successor corporation being formed, was not a qualified claimant within the purview of the Philippine Rehabilitation Act of 1946, as amended. Advice was also given that an appeal could be made within 90 days, and an oral presentation on such appeal might be had if requested.
12. On April 18,1950, a corporation was formed under the name Equitable Infants Wear, Inc., hereafter referred to as the “new corporation,” by filing with the secretary of state of New York the necessary legal papers entitled “Certificate of Incorporation.” The stockholders of this corporation are Shaya Dweck, Molly Dweck and Pauline Tawil. The directors are the same named individuals and in addition, Simon D. Roffe, who had been the manager of the Manila office of the corporation bearing the same name (hereafter referred to as the “old corporation”) which had operated in the Philippines but which had been dissolved in 1945. There is no reference in the incorporation papers of the new corporation that it was being formed as successor to any previous firm.
13. On April 19, 1950, the new corporation, by Shaya Dweck, treasurer, wrote to the Commission at its Washington office appealing from the disallowance of the claim which had been made in the name of the old corporation. Such letter is quoted in pertinent part below:
On January 24, 1950, the above entitled claim was disallowed for the reason that the Equitable Infants Wear Inc., a dissolved corporation in the process of liquidation with no successor corporation being formed, *773 is not a qualified claimant within the purview of the Philippine Rehabilitation Act of 1946, as amended. For your convenience, I annex hereto a photostatic copy_ of your letter of January 24,1950, disallowing said claim.
Claimant corporation was originally organized under the Laws of the State of New York in 1925 and for several years prior to December 7,1941 was engaged in the Philippine Islands in the business of manufacturing infants and childrens wear.
Upon the invasion of the Philippine Islands by the Japanese, the property of the claimant was confiscated by them, resulting in a very substantial loss, the subject matter of this claim. Because of such serious loss of capital and the uncertainty as to when claimant would be able to resume its operations in the Philippine Islands, claimant commenced liquidating its business and on January 30,1945, claimant corporation was legally dissolved. This claim was of course not liquidated, the laws of the State of New York permitting a dissolved corporation to prosecute any outstanding claims.
The Commission’s attention is respectfully called to the fact that the claimant corporation was dissolved on January 30,1945, long before the Philippine Rehabilitation Act of 1946 was enacted and consequently claimant could not have anticipated at the time of its dissolution, that said Act would require that a corporate claimant must he in legal existence to qualify as a claimant under said Act. Now that claimant has become aware of such requisite, it has been re-incorporated in the State of New York on April 18,1950, as successor, and is owned by the same stockholders and managed by the same Board of Directors as at the time of its dissolution, with the exception that Pauline Tawil, the widow of Ralph Tawil who [w]as deceased in the interim, is now a stockholder in his place, and Simon Roffe, a brother-in-law of said Ralph Tawil succeeds him as a member of the Board of Directors.
It has been the intention of claimant to reestablish its business in the Philippine Islands as soon as it should be able to secure a sufficient capital to do so. Claimant now realizes that it would be far more practical to invest the proceeds of this claim in the business of Baby Fashions, Inc., to which claimant corporation previously, during the course of its liquidation, had transferred the remaining assets of its business.
Baby Fashions, Inc., is a New York corporation which is presently manufacturing infants and childrens wear in the Philippines and has been so engaged there since *774 September 1945. Since the incorporation of Baby Fashions, Inc., there has been an interlocking of the directorship and ownership of that corporation with the claimant corporation. Ralph Tawil, before his decease, and Pauline Tawil, were stockholders and directors of Baby Fashions, Inc., and of Equitable Infants Wear Inc., claimant. Pauline Tawil is now the sole stockholder of Baby Fashions, Inc., and a stockholder of claimant corporation. She and her brother, Simon Roffe, the present directors of Baby Fashions, Inc., also are directors of claimant corporation, together with Shaya Dweck and Molly Dweck, the latter two haying at all times been directors of claimant corporation.
Baby Fashions, Inc., now employs a considerable capital in its business in the Philippines and the investment by claimant corporation with Baby Fashions, Inc., in the Philippines would substantially increase their business there and thus fulfill the purpose and intent of the Philippine Rehabilitation Act.
Filed herewith is the affidavit of Shaya Dweck, Treasurer and Director of Equitable Infants Wear Inc., setting forth the intent of claimant to invest the proceeds of this claim in the Philippine Islands as set forth herein, and the affidavit of Pauline Tawil, President and Director of Baby Fashions, Inc., declaring the willingness of the latter to accept such proceeds as an investment in its business in the Philippine Islands.
Claimant respectfully requests an opportunity to make an oral presentation of this appeal and would appreciate your advice as to the time and place thereof.
14. The Commission, through its Secretary at Manila, on August 18,1950, communicated its “Findings on Appeal” in the matter to the new corporation, Equitable Infants Wear, Inc., in the following terms:
1. After due consideration of claimant’s appeal from the previous determination of the Commission, said determination is hereby affirmed and claim is denied on appeal.
2. The reasons for the foregoing action are:
Claim was filed for ¥=80,568.21 for the loss of buildings, personal property, motor vehicles and inventories. The claimant is a corporation, organized under the laws of the State of New York in 1925, which had for sometime prior to December 7,1941 engaged in the manufacture of infants and children’s wear in Manila. After the commencement of the war the claimant began to *775 liquidate its assets and on January 30,1945 was legally dissolved. At the time of the dissolution, Ealph Tawil was President and Secretary and Shaya Dweck was Vice President and Treasurer. On September 23,1940 these persons were the then holders of all of the capital stock of the corporation and it is presumed that they owned such stock at the time of its dissolution. _
_ It appears that although the corporation was not dissolved until 1945, the liquidation of its assets was substantially completed during 1944 and its remaining assets and liabilities were taken over by another corporation, Baby Fashions, Inc., which was incorporated in the State of New York about August, 1944. Some of the stockholders and officers of Equitable Infants Wear, Inc., were also the stockholders and officers of Baby Fashions, Inc., and Pauline Tawil, the widow of Ealph Tawil, is now the sole stockholder of Baby Fashions, Inc. However, Shaya Dweck, one of the Stockholders of Equitable Infants Wear, Inc., was not a stockholder in Baby Fashions, Inc., and he stated in a letter to the Commission dated November 29, 1949 that although all other assets and liabilities were transferred to Baby Fashions, the war damage claim of Equitable Infants Wear, Inc., was not transferred because he was not a stockholder in Baby Fashions. He also stated that Ealph Tawil, the other stockholder, organized Baby Fashions, Inc., to continue the operations of the business formerly operated by Equitable Infants Wear, Inc. Baby Fashions, Inc. occupied the premises in New York City which had been formerly occupied by Equitable Infants Wear, Inc., and after Manila was liberated in 1945 it resumed the infants wear business in Manila. Dweck in an apparently contradictory letter of October 25, 1949 to the Commission stated that Baby Fashions, Inc., is not and never was the successor to the Equitable Infants Wear, Inc., and that there was never any transfer of the assets and liabilities of Equitable Infants Wear, Inc., to Baby Fashions, Inc.
The claim was totally disallowed on January 24,1950 for the reason that the claimant corporation had been dissolved and that no successor corporation had been formed.
On appeal, claimant alleges that although the corporation was legally dissolved on January 30, 1945, the present claim was not liquidated as the law of the State of New York permits a dissolved corporation to prosecute any outstanding claim.
*776 It is also shown that on April 12,1950, Shaya Dweek, Molly Dweek and Panline Tawil executed articles for the incorporation in the State of New York of a corporation known as Equitable Infants Wear, Inc. and it is stated that on April 18,1950, a certificate of incorporation was granted. It is alleged that this corporation is the successor of the former Equitable Infants Wear, Inc., although the certificate of incorporation does not specifically authorize nor state such to be one of the purposes of incorporation. It is alleged that this corporation, was specifically incorporated for the purpose of complying with the requirement of the Commission, and that it is owned by the same stockholders and managed by the same Board of Directors as the previous corporation of the same name, with the exception that Pauline Tawil, the widow of Ralph Tawil, is now stockholder in his place and that Simon Roífe, a brother-in-law of the late Ralph Tawil, has succeeded him on the Board of Directors. It does not appear that the new Equitable Infants Wear, Inc., intends to engage in business in the Philippines on its own .behalf, but rather that it intends to invest any proceeds of the war damage claim in the business conducted in Manila by Baby Fashions, Inc.
In view of all the foregoing, the Commission holds that neither the Baby Fashions, Inc., nor the new Equitable Infants Wear, Inc., can be considered as the legal successor of the former Equitable Infants Wear, Inc., within the meaning of the Philippine Rehabilitation Act of 1946, as amended.
The appeal is, therefore, denied on the basis that a successor corporation had not been formed within the time fixed by the Commission.
3. The above determination is final and not subject to further appeal or review.
Approved by the Commission this 18th day of August, 1950.
15. By the terms of section 113 of the Philippine Rehabilitation Act, the findings of the Commission regarding the amount of loss or damage sustained, the cause of such loss or damage, the persons to whom compensation pursuant to the act might be payable, and the value of the property lost or damaged were made conclusive and not reviewable by any court.
The findings of the Commission were limited to the question of the persons to whom compensation pursuant to the *777 act might be payable. The present plaintiff, Equitable Infants Wear, Inc. (the new corporation), after a trial in this court, has not shown that it has succeeded to the interest of any other firm. It is found, therefore, that this plaintiff is not the owner of claim No. 422 which had been filed with the Commission.
16. It is shown by the evidence that a firm by the name of Baby Fashions, Inc., was formed as a New York corporation on August 16,1944, by Abraham Goldstein, Abraham Gold-blatt and Beatrice Kirschner, each of whom was a director as well as a stockholder.
Pauline Tawil is now president of Baby Fashions, Inc. She testified briefly, stating that Baby Fashions, Inc., continued in business in New York and that “As far as I know, as soon as operations were resumed, we went back to doing the same type of work in the children’s wear.” To the next question asked by plaintiff’s counsel, “In the Philippines?” she answered, “In the Philippines.”
An examination of plaintiff’s exhibit 12, the certificate of incorporation of Baby Fashions, Inc., does not in any way reveal that it became a successor to Equitable Infants Wear, Inc., the company dissolved in 1945. On the other hand, Baby Fashions, Inc., was formed prior to such dissolution.
17. With the funds available to the Commission, claimants whose claims were allowed were paid fifty-two and one-half per cent (52%%) of the approved amount.
18. Section 104 (c) of the Philippine Rehabilitation Act of 1946 provides as follows:
All of the provisions of this title shall be subject to the requirement that, to the fullest extent practicable, the Commission shall require that the lost or damaged property be rebuilt, replaced or repaired before payments of money are actually made to claimants under this title.
In this connection, the Commission, in its Final and Ninth Semiannual Report to the Congress dated March 31, 1951, stated:
The Commission consistently maintained a close check on the uses to which the larger claimants put their war damage payments. Its regulations prescribed those *778 types of reinvestment which it believed were required to meet the intent of the law. Before first payments of $15,-000 or more were made, the claimant was required to submit a sworn statement regarding the planned expenditure of the money, except when the Commission had concrete evidence that he had invested more in the rehabilitation of his property than he would be paid. Unless the reinvestment statements were satisfactory, payments were denied. Before second and final payments were made on claims for which combined payments would total $25,000 or more, the Commission again communicated with claimants to make certain that first payments had been expended in accordance with their sworn statements and that second payments would also be used for rehabilitation. These replies had to be satisfactory to the Commission before funds were released. In this manner, the Commission believes it insured the proper expenditure and reinvestment of its rehabilitation funds.
19. It is clear from the evidence of record that three items of claim of Equitable Infants Wear, Inc. (old corporation), would not have been approved for payment by the Commission under any circumstances. These include the overhead item of $4,607.87, accounts receivable $700, and personal clothing of an employee $69.
The evidence is generally satisfactory that the value of the lost or destroyed property covered by the claim (finding 5) was, at the time of the loss, approximately the amount claimed, $40,284.10, from which should be deducted the total of the three items described above or $5,376.87, making a net value of $34,907.23.
CONCLUSION
Upon the basis of the foregoing findings of fact and for the reasons expressed, we are of the opinion that the plaintiff has neither a legal nor an equitable claim against the defendant on account of the loss or destruction of or damage to its property in the Philippines during the Japanese occupation thereof.
The opinion, findings of fact, and conclusion will be certified to Congress pursuant to House Eesolution No. 561, dated June 15,1954.